IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JESSAYLYN BARR, individually and by )
her parent, JENNIFER BARR, and )
JENNIFER BARR, individually, )
                                        )
        Plaintiffs,                     )    No. 06 C 5639
                                        )
    v.                                  )
                                        )
UNITED STATES OF AMERICA, FENCE         )
CRETE AMERICA, INC., TURF CARE          )
LANDSCAPING, INC.                       )
                                        )
        Defendants.                     )

## MEMORANDUM OPINION AND ORDER

On October 23, 2004, Jessalyn Barr, then five years old and living with her family on the Great Lakes Naval Base in Great Lakes, Illinois, was severely injured when a portion of a concrete wall bordering an open field near her home fell onto and crushed her head. On October 17, 2006, Jessalyn and her mother, Jennifer, brought this action to recover for injuries they sustained as a result of the accident. Among other claims, plaintiffs assert a claim for relief against the United States ("defendant") pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671 et seq. ("FTCA"), alleging that Jessalyn's injuries resulted from negligence on the part of the United States. Plaintiffs' first amended complaint asserts that the United States: a) failed to properly repair and maintain the concrete wall; b) failed to inspect or have a proper inspection in place to detect the unreasonable and dangerous

condition of the concrete wall; c) failed to warn the general public, including Jessalyn Barr, of the dangerous and defective condition of the concrete wall; d) failed to properly inspect the concrete wall to determine whether said wall conformed to the required specifications necessary for that type of wall; e) failed to barricade said concrete wall to prevent individuals, including Jessalyn Barr, from coming near the wall while it was in its dangerous and defective condition; and f) allowed the concrete wall to remain in a hazardous, dangerous, and unsafe condition.

The United States has brought a motion for summary judgment seeking to dispose of plaintiffs' putative negligent selection, negligent oversight,[1] and police response claims. For the reasons discussed below, the motion is granted in part.

I.

The facts of this case are not in dispute. In fact, neither party responded to the other's Local Rule 56.1 statement of material facts.[2] Accordingly, all of the facts set forth in their respective L.R. 56.1 filings are deemed admitted. *Espinoza v. Northwestern University*, 105 Fed.Appx. 113, 114 (7th Cir. 2004)

---

[1]Defendant sometimes refers to this claim as "negligent supervision."

[2]While the United States argues generally that most of plaintiffs' asserted facts "can be disputed," it did not dispute any as provided in L.R. 56.1.

(statements not controverted deemed admitted, provided they are supported by the record).

In February of 1998, after engaging in a competitive selection process, the United States Navy hired defendant Turf Care, Inc., the lowest bidder, to install a plastic perimeter fence around two Navy housing villages. Later that year, in response to neighborhood safety concerns, the Navy decided to install a concrete barrier fence along one portion of the perimeter, and to make completion of the concrete fence a priority. The Navy did not solicit competitive bids for the concrete fence project but contracted with Turf Care to undertake the project as a modification to the earlier, plastic fence project.

The contract specifications for the concrete barrier project provided that Turf Care was responsible for submitting a detailed quality control plan, which required the Navy's approval prior to the start of work. Defendant's L.R. 56.1 Statement of Material Facts ("SMF"), Exh. K at section 01450 p. 2. After approval, "[t]he Contracting Officer [i.e., the Navy] reserves the right to require changes in the QC Plan and operations as necessary to ensure the specified quality of work." *Id*. The specifications also included detailed requirements, incorporating criteria set forth in various American Society for Testing and Materials (ASTM) publications, relating to the materials to be used. *Id*. at section 01450 page 1.

In a pre-construction conference attended by Navy personnel (including project manager Sandy Ginalski and construction representatives Sue Smith and John Pflug[3]) and Turf Care employees (including vice president and project manager George Lytle and project superintendent Ronald Blalock[4]), detailed contract administration procedures were set forth. According to these procedures, "the contractor (i.e., Turf Care) shall maintain an adequate inspection system, to ensure that work conforms to contract requirements." Def.'s SMF, Exh. J at 9. Pre-installment meetings were also held, at which Navy representatives discussed and approved the methods and materials to be used.

During the installment phase of the project, Turf Care was responsible for day-to-day operations, and the United States did not communicate with laborers, provide equipment, or dictate the means and methods of installation. John Pflug was onsite daily, however (except during a short medical leave), and Sue Smith visited the site three days a week. Both Pflug and Smith inspected the installation to ensure it was being carried out in accordance with the project plans and specifications. Both testified that they inspected the materials prior to their use. Pflug also testified that during his inspections, he measured the depths of

---

[3]The United States spells his last name "Plug" in its filings, but "Pflug" appears to be the correct spelling.

[4]His last name also appears in the record as "Balock," "Blaylock," and "Blaloch."

the holes dug for the footings of the fence and confirmed that they were consistent with the specifications.  In addition to Pflug's and/or Smith's daily site inspections, weekly meetings were held between Navy representatives and Turf Care representatives to discuss any issues that arose.

Turf Care subcontracted with defendant FenceCrete to obtain the pre-cast concrete panels that were used in the construction of the fence.  The United States had no contractual relationship with FenceCrete.  Although the parties are silent in their briefs as to how FenceCrete was chosen to provide the fence materials, there is evidence in the record to suggest that the United States chose FenceCrete to be Turf Care's subcontractor.  In an undated Quality of Life Point Paper, Lieutenant Ralph Ingraham, Chairman of the QOL[5] Housing Committee, set forth a proposal for installing a solid barrier in the area posing safety concerns.  He stated:

> NTC[6] Housing engineers contacted their equivalents at Maxwell [Air Force Base] and learned that the installation cost, done by Fencrete (sic) America (see enclosure (1)) was approximately $62 per foot.  The fencing is made entirely of concrete, pre-cast posts that allow pre-cast panels to slide into grooves. The length along the 24th Street border is 1,240 feet, therefore, the estimated cost, if installation cost is the same as Maxwell AFB, would be approximately $77,000.  This cost will increase if the existing 10-foot fence is to be removed.

---

[5]I assume this stands for "Quality of Life."

[6]Presumably, "Naval Training Center."

Def.'s SMF, Exh. E.  The Quality of Life paper concludes with the recommendation to install an 8-foot solid barrier at the identified location, based on the "example" at Maxwell Air Force Base.  *Id*. A reasonable inference is that the United States decided to use FenceCrete based on Maxwell's experience and the information provided by Maxwell's housing engineers.

Even more forceful evidence that the United States was responsible for FenceCrete's selection is a letter dated April 27, 1999 from George Lytle of Turf Care to Sandy Ginalski.  In that letter, Lytle requests an increase in the contractual amount Turf Care would receive for the project to compensate for additional labor costs occasioned by defective material provided by FenceCrete.  Lytle states, "[s]ince the manufacturer, Fencecrete America, is *the company that the Navy insisted that we purchase the product from*, we feel the Navy should compensate Turf Care Landscaping for additional labor costs..." (emphasis added) Plaintiffs' SMF, Exh. F.

John Pflug indeed became aware, during installation, of defects in the materials obtained from FenceCrete, such as chips in the concrete and roughness of the posts.  He concluded, however, that the problems were not structural.  Smith testified that she cannot recall whether at the time of installation, she believed the fence was being installed properly.  Her testimony on what she would have done had she concluded that it was not being installed

properly is muddled: she first stated that she probably would have done nothing and would have spoken to no one, but then said she probably would have spoken to project manager Sandy Ginalski, and might in fact have done so.

At the conclusion of the concrete barrier's installation, Smith, Pflug, and other Navy representatives conducted a final walk-through of the project. The United States did not conduct ongoing inspections of the concrete fence after the project was completed.

On the day Jessalyn Barr was injured, Officer Cecil Robinson, a patrolman for the Great Lakes Police Department,[7] was at the scene both before and after the incident occurred. Robinson testified that before the accident (though how much before is not clear), he observed the wall in state of disrepair and believed it to be "a potential hazardous situation." Pl.'s SMF, Exh. E at 92. Moments before the accident, Jennifer Barr spoke to a police officer, who may have been Officer Robinson.[8] That officer did not warn Jennifer about any danger relating to the wall.

---

[7]I assume that in this capacity, Mr. Robinson acts as an agent of the United States, based on his testimony that his employer is the Department of Defense.

[8]I have found nothing in the record that either supports or refutes plaintiffs' suggestion that Robinson was indeed the unidentified officer with whom Ms. Barr testified she spoke, and the United States has offered no position on this issue.

Summary judgment is proper where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The United States moves for summary judgment on three putative claims: 1) negligent selection challenging the Navy's selection of Turf Care to install the concrete fence; 2) negligent oversight challenging the conduct of Navy employees who oversaw installation of the fence; and 3) negligent police response challenging the conduct of Great Lakes Police Department officers on the day of the accident. Of course, these claims do not facially appear in the first amended complaint. Defendant argues, however, that plaintiffs' interrogatory answers and expert reports reveal that these are the theories of liability underlying certain of the stated claims. According to this argument, plaintiffs' claim that the United States "failed to properly inspect the concrete wall to determine whether said wall conformed to the required specifications necessary for that type of wall" (for ease of

reference, I will refer to this as the "failure to inspect" claim[9])
asserts claims for negligent selection and negligent oversight,
while their claim that the United States "failed to warn the
general public, including the Plaintiff, of the dangerous and
defective condition of the concrete wall" asserts a claim based on
negligent police response.

The United States then argues that these claims, as it
construes them, are barred under the FTCA because plaintiffs failed
to exhaust their administrative remedies prior to bringing suit in
federal court. Specifically, defendant asserts that plaintiffs'
administrative claim did not properly present these claims because
it failed to narrate facts sufficient to put the United States on
notice of the nature of the claims. Defendant further contends
that even if plaintiffs properly presented these claims to the
appropriate agency, the negligent selection and negligent oversight
claims are barred by the contractor and discretionary function
exceptions to liability under the FTCA.

Plaintiffs respond that they have not made the claims on which
the United States seeks judgment, and that the true purpose of the
United States's motion for summary judgment is to limit the scope

---

[9]The first amended complaint asserts two failure to inspect
claims, but only one is at issue here. It is not my intention to
address the claim that the United States "failed to inspect or have
a proper inspection system in place to detect the unreasonable and
dangerous condition of the concrete wall," and nothing in my
analysis should be presumed applicable to that claim.

of plaintiffs' expert testimony.  In light of this response, it makes sense to ascertain the true nature of plaintiffs' claims before proceeding to the merits of the United States's legal arguments.

Plaintiffs' failure to warn claim is straightforward on its face.  Plaintiffs allege, in a negligence count, that the United States "failed to warn the general public, including the Plaintiff, of the dangerous and defective condition of the concrete wall." A natural reading of the claim in this context is that the United States had some duty to warn plaintiffs about the wall but failed to uphold that duty.  The United States points to only one item in the record--plaintiffs' amended answer to an unidentified interrogatory--to support its argument that plaintiffs seek to "convert" their failure to warn claim into something else. Defendant asserts that plaintiffs "disclosed a previously unidentified negligent police response claim" with the statement that an unknown police officer believed to be Cecil Robinson "failed to warn the Barr family of the dangerous and unsafe condition of the concrete wall when he was talking to Jennifer Barr in the open field just moments before the accident."[10]

---

[10]The United States cites to "Def.Stmt. at ¶ 20" for this quotation. This appears to be an erroneous citation to ¶ 24 of the United States's L.R. 56.1 statement.  In fact, nearly all of defendant's citations to its statement of facts are misnumbered.

The United States's argument has no merit.  The interrogatory answer does no more than identify, to the extent plaintiffs apparently have been able, a specific individual believed to be an agent of the United States who plaintiffs contend had a duty to warn plaintiffs about the dangerous concrete wall but failed to do so.  It goes directly to the elements of plaintiffs' failure to warn claim as asserted in the first amended complaint.

Because the United States has not shown that this claim is anything other than what it appears to be, and because the United States does not seek summary judgment on the claim as asserted, I need not linger on this issue.  The United States's motion for summary judgment of the putative "negligent police response" is denied as moot because no such claim is pending.

Whether plaintiffs' allegation that the United States "failed to properly inspect the concrete wall to determine whether said wall conformed to the required specifications necessary for that type of wall" asserts claims for negligent selection and/or negligent oversight is less clear.  In their response to defendant's summary judgment motion, plaintiffs generally disavow the claims as defendant characterizes them, stating: "It is difficult to respond to the United States['s] motion *when plaintiff has not made the allegations claimed by it*."  Pl.'s Resp. to SJ at 2. (Emphasis added) Further on in their brief, however, plaintiffs indicate that they do intend to base their negligence claim, at

least in part, on evidence that defendant failed to select an appropriate contractor and failed to oversee the work of that contractor. Plaintiffs state that "[t]he United States of America was negligent for its failure to inspect on several different levels," and refer to the reports of their proposed "liability experts."

Among the far-reaching opinions offered by these proposed experts are statements that the United States negligently failed "to solicit competitive bids for the precast concrete fence selected for the project"; "to properly qualify both Turf Care and Fencecrete for the project"; to "prevent improper and unapproved materials from being used during construction of the fence"; to "take the proper action when told that [Turf Care] was incompetent and when [FenceCrete] provided defective parts; and to "ensure clear, concise and executable plans and specifications that were understood by all." Def.'s SMF, Exh S. The experts also opine that the United States "should have retained adequate engineers or architects to properly lay out and prepare necessary drawings and documents for construction of a concrete fence"; "should have provided adequate means of inspection to ensure conformity with the appropriate standards applicable to this type of fence"; and "should have taken an active role to ensure that poor precast concrete work and deficient components were properly disposed of and not used in the actual construction of the fence." *Id*.

While these conclusions are not exhaustive of the proposed experts' opinions, they suffice to suggest that plaintiffs intend to include a range of selection- and oversight-related acts and omissions in support of their failure to inspect claim. Accordingly, that claim may reasonably be read as encompassing negligent selection and negligent oversight claims. I thus turn to defendant's legal arguments directed to those claims.

A. Exhaustion of Administrative Remedies

The FTCA authorizes actions against the United States to be brought in federal district courts:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Berkovitz v. United States*, 486 U.S. 531, 535 (quoting 28 U.S.C. § 1346(b)). Before a claimant may file a claim against the United States in federal court, however, she must first seek an administrative resolution by filing her claim with the relevant agency, pursuant to 28 U.S.C. § 2675(a). She may proceed to federal court only if her claim is finally denied by the agency, or if the agency fails to make a final disposition of the claim within six months of its filing. *Id*. The failure to exhaust administrative remedies prior to bringing suit in federal court mandates dismissal of the claim. *Palay v. United States*, 349 F.3d

418, 425 (7th Cir. 2003) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993).

In this case, plaintiffs filed a timely administrative claim on Standard Form 95 and submitted it to the Navy. Their account of the incident as pertains to the claims at issue follows:

On 10/23/2004, Jessalyn Alexis Barr, a minor, was playing in or near an area near her home that mainly consisted of an (sic) park or field. Bordering the open field was a concrete wall. A portion of the concrete wall had a large hole towards the center. Jessalyn Barr stuck her head through the opening of the wall at which time a portion of the wall came falling down crushing Ms. Barr's skull. The owner of the concrete wall, believed to be the United States Government, Department of the Navy, knew or should have known of the dangerous and defective condition of the concrete wall, i.e., a large hole in the portion of its mid-section. Additionally, there was a failure to inspect and repair the concrete wall in a timely fashion. The United States of America, Department of the Navy, knew or should have known by and through its agents and employees of the dangerous condition of the concrete wall. One of claimant's neighbors, Ardelia Deloatch ([address]) identified a large hole towards the mid-section of the concrete wall as early of (sic) June or early July, 2004. Ms. Deloatch has signed a sworn statement confirming her belief that as early of (sic) June or July of 2004 a large hole existed towards the mid-section of the concrete wall. In addition, there may have been a dangerous and/or defective design involving the concrete wall. The concrete wall became extraordinarily dangerous when and if a mid-section of the wall would be destroyed as in this case. It is understood that the Great Lakes Police Department has investigated this matter and has prepared an extensive police report identified under incident number 044281301653 and report number 044281301653 revision one. As a result of the concrete wall collapsing on plaintiffs' head, she sustained numerous head and facial injuries. ...

Def.'s SMF, Exh. Q.

Defendant contends that this account was insufficient to give the Navy notice of plaintiffs' negligent selection and negligent oversight claims. I disagree. As defendant acknowledges, an administrative complaint should be interpreted liberally and need not include legal theories. The claim must merely "narrate facts from which a legally trained reader could infer" a particular type of claim. *Murrey v. United States*, 73 F.3d 1448, 1453 (7th Cir. 1996). This requirement does not, however, require a plaintiff to set forth every fact it believes supports its claim. All that is required is "sufficient notice to enable the agency to investigate the claim." *Palay v. United States*, 349 F.3d 418, 426 (7th Cir. 2003).

Defendant argues that the administrative claim contained no allegations that Jessalyn's injuries arose from the United States's failure to inspect and oversee the installation of the fence five years before the accident. But the portion of the administrative complaint asserting that "there may have been a dangerous and/or defective design involving the concrete wall" shows that plaintiffs' claim was not limited to acts and omissions that occurred on or around the accident date. Moreover, because the administrative claim does not allege that the United States itself designed the defective wall, a legally trained reader may infer that the design defect allegations against the United States assert liability based on some species of failure to detect theory.

Negligent oversight of the wall's installation is clearly within this realm. While negligent selection of the contractor who installed the wall is a less obvious inference, under the liberal standard that applies, I find that it was nevertheless adequately presented.

Based on the foregoing discussion, I conclude that plaintiffs' negligent selection and negligent oversight claims are not barred for failure to exhaust administrative remedies.

## B. Exceptions to the FTCA

The United States next argues that it cannot be held liable for plaintiffs' negligent selection and negligent oversight claims because these claims fall outside the scope of the FTCA's waiver of sovereign immunity. Defendant first argues that the claims are barred by the FTCA's "contractor" exception. Pointing to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671, defendant asserts that the United States is liable for acts or omissions only of government *employees*, not of government *contractors*. This proposition is beside the point. Plaintiffs do not contend that Turf Care should be deemed a government employee (though that is the strawman argument defendant attacks). As is obvious from defendant's own characterization of these claims as negligent selection (by government employees) of Turf Care, and negligent oversight (by government employees) of the work done by Turf Care and/or FenceCrete, the focus is on the acts or omissions of the government

employees, not of the contractor.  Accordingly, these claims are not subject to the "contractor" exception to the FTCA.

Defendant next argues that the claims are barred by the FTCA's "discretionary function" exception.  Under the statute, "claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused" are outside the statutory waiver of sovereign immunity.  28 U.S.C. § 2680(a).  In their briefs, the parties address plaintiffs' negligent selection and negligent oversight claims jointly.  It seems to me, however, that these claims must be addressed separately.

To the extent plaintiffs acknowledge their negligent selection claim at all (recall that they disavow generally the claims defendant imputes to them), they say little in their brief about its substance.  The thrust of the claim, as best I can surmise based on the opinions of plaintiffs' proposed experts and plaintiffs' comparison of their own claims to those raised in *McMichael v. United States*, 751 F.2d 303 (8th Cir. 1985) (which plaintiffs call the "most analogous" case to theirs), is that the United States failed 1) to solicit competitive bids for the concrete project, and 2) to "qualify" both Turf Care and FenceCrete for the project.

*McMichael* is no help to plaintiffs on their negligent selection claim because it unequivocally supports defendant's position that that claim is barred by the "discretionary function" exception. In fact, the *McMichael* court twice held that the claim that the government was negligent for awarding a contract to an admittedly incompetent contractor was barred by the discretionary function exception. 751 F.2d at 307 ("We also affirm our prior conclusion that the government's decision to award the contract to [contractor] is an immune discretionary function.") Moreover, plaintiffs do not dispute defendant's factual assertion that "whether a contract is open to competitive bidding or incorporated as a modification is within the discretion of the contracting officer." Def.'s SMF ¶ 8. In short, plaintiffs have identified neither legal authority nor any evidence to refute defendant's argument that the selection of Turf Care was "the permissible exercise of policy judgment." *Berkovitz v. United States*, 486 U.S. 531 (1988). *See also Wood v.* U.S. 290 F.3d 29, 38 (1st Cir. 2002) (Navy's selection of contractor it determined to be "best value" for American taxpayer protected by discretionary function exception). Accordingly, defendant's motion for summary judgment is granted as to plaintiffs' negligent selection claim.

The factual and legal environment is more hospitable to plaintiffs' negligent oversight claim. Plaintiffs argue that regardless of the Navy's delegation of certain responsibilities to

Turf Care, including for quality control, the United States had a duty to ensure that the job was undertaken in such a manner as to result in an end product that was reasonably safe for the public. Defendant points to federal regulations providing that contracting officers have "wide latitude to exercise business judgment" in performing their responsibilities, 48 C.F.R. 1.602-2, to support its argument that the United States is immune from liability for negligent oversight of Turf Care's work. Indeed, at least one court has cited this regulation in holding that contracting officers have discretion in ensuring contractor compliance with contractual safety requirements. *Wood*, 290 F.3d at 39. In that case, however, there was no evidence in the record that the Navy "retained close supervisory control over" the contractor's work. *Id*. at 36, n. 4. Here, by contrast, there is evidence that Navy employees, including John Pflug and Sue Smith, were at the worksite on a daily basis. Moreover, Pflug's oversight included supervising details as minute as the width and depth of the holes used for structural support and the size and importance of chips observed in the concrete panels.

In this regard, plaintiffs' comparison of their case to *McMichael* works in their favor. The *McMichael* court held that where the government had retained a substantial degree of control over the contractor's work, the United States was liable under the state law rule that "one who entrusts work to an independent

contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." 751 F.2d 303 at 308-09.[11]

In evaluating the level of control the government maintained in *McMichael*, the court considered: 1) the government's promulgation of detailed safety requirements and incorporation of those requirements into the contract; 2) express reservation of continuous inspection authority to ensure compliance with the safety requirements; 3) the continuous presence of three government inspectors on the job for the explicit purpose of insuring compliance with safety and quality requirements; and 4) the failure to perform the required inspections or to take action when violations were observed. *Id*. at 309-310.[12] The record in this case suggests that these factors are present here as well. There is no question that the detailed contract specifications, including references to American Society for Testing and Materials standards,

---

[11]The *McMichael* claim was decided under Arkansas law. The parties have not addressed whether Illinois law permits such a claim, but for the purpose of summary judgment, where all reasonable inferences are to be drawn in favor of the non-movant, I assume that it would.

[12]The court also considered the ultrahazardous nature of the work involved. This factor is not present here, but I find the remaining factors sufficiently similar to the circumstances here to be analytically comparable.

set forth detailed safety requirements. The Navy expressly reserved the right to inspect the contractor's work,[13] and did, in fact, oversee the work on a daily basis. It also appears that certain defects in the materials were brought to the attention of the contracting officers, and that appropriate steps to ensure the safety of the wall may not have been taken.

These facts also call to mind the Supreme Court's decision in *Indian Towing Co. v. United States*, 350 U.S. 61 (1955), where the government was sued for negligently failing to maintain a lighthouse in good working order. The Court explained that while the initial decision to undertake and maintain lighthouse service was a discretionary judgment protected by the discretionary function exception, the failure to exercise due care to maintain the lighthouse in good working order was not a permissible exercise of policy judgment. *Id*. at 69. The United States was therefore liable for its negligence. In this case, the Navy undoubtedly had broad discretion to oversee its contractor in the manner it deemed fit. Having undertaken, however, to be closely involved in the details of the project, from mandating FenceCrete as the supplier

---

[13]C.F.R. § 52.246-12 relating to inspection of construction provides that inspections performed by contracting officers are for the government's own benefit and do not relieve the contractor of responsibility for providing adequate quality control measures. Although the parties have not briefed this issue, this section appears designed to protect the government's contract interests vis-a-vis its contractors, not to immunize it from tort liability vis-a-vis third parties, such as plaintiffs.

of materials to maintaining the active, onsite presence of construction representatives (interpreting the evidence in the light most favorable to plaintiffs, of course), the United States was not free to decline to exercise due care in its supervisory capacity.

Based on the foregoing discussion, defendant's motion is denied as to plaintiffs' negligent oversight claim.

### III.

For the reasons discussed above, the United States's motion for summary judgment is granted in part. Plaintiffs' claim for negligent selection of Turf Care is dismissed.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 17, 2009

22